IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WESLEY A. CLEAVER,<br><br>                Plaintiff,<br><br>    vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>                Defendant. | **8:18CV512**<br><br>**MEMORANDUM AND ORDER** |

      This matter is before the Court on defendant Union Pacific Railroad Company's ("U.P." to "the Railroad") motion for summary judgment, Filing No. 42, and motions in limine, Filing Nos. 44 and 46. This is an action brought pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq. The plaintiff alleges his exposure to various toxic substances while working for the Railroad caused him to develop mantle cell lymphoma, a subtype of non-Hodgkin's lymphoma.

      U.P. moves in limine to exclude the testimony of the plaintiff's two experts: Dr. Theron Blickenstaff, M.D., M.P.H., and Dr. Hernando Perez, Ph.D., M.P.H. under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). It asserts that the opinions disclosed by both experts lack a scientifically valid basis, are not based on sufficient facts and data, were reached without scientifically reliable methods and principles, and lack reliable scientific reasoning, methodology, and foundation as required by Fed. R. Evid. 702 and *Daubert*, 509 U.S. at 591. The defendant also moves for summary judgment, arguing that if the testimony of the plaintiff's experts is excluded, the plaintiff will be unable to establish the level of Cleaver's toxic exposure or causation and will be unable to prove that the Railroad is liable under the FELA. The plaintiff argues that the defendant's

1

*Daubert* challenge goes to the weight, not the admissibility, of the evidence and contends that genuine issues of material fact preclude summary judgment.

The following facts are gleaned from the parties' respective statements of undisputed facts and from evidence of record. Filing No. 43, Defendant's Summary Judgment Brief at 3-11; Filing No. 59, Plaintiff's Response Brief at 3-10; Filing Nos. 48 and 60, Appendices of Evidence. The plaintiff worked for Union Pacific from 1975 until 2014. In November 2014, at age 58, he was diagnosed with mantle cell lymphoma. In 2015, the plaintiff took medical disability retirement. Before his mantle cell lymphoma diagnosis, Cleaver's medical history included hypothyroidism, hypertension, gout, obesity, and Type 2 diabetes mellitus. Cleaver was a maintenance-of-way employee for Union Pacific. For the first five to six months of his employment, he worked as a laborer on a tie gang. After that period, he was a track machine operator. He performed track construction in the warmer months and snow removal in the winters. From 1991 to the end of his career, Cleaver operated a locomotive crane, which had an enclosed cab with air conditioning and heating. Before 1991, the plaintiff primarily operated a tamper, a ballast regulator, and occasionally a speed swing. Except for a short period in 1975 when he first started as a machine operator, every tamper he operated had an enclosed cab. In the mid-1980s, the plaintiff was fitted for a respirator. He always carried his respirator and wore it when the work generated dust or when the rules otherwise required it.

Dr. Hernando Perez is an industrial hygienist who was retained by the plaintiff to testify, generally, as to notice and foreseeability of the hazards associated with the plaintiff's employment and the railroad industry's knowledge of the hazards of exposure

to toxins.[1] Filing No. 48-3, Ex. 3, Expert Disclosure. Dr. Perez has a Ph.D. in industrial hygiene from Purdue University and a Master of Public Health degree in environmental and occupational health from Emory University. Filing No. 48-6, Ex. 6, Dr. Perez Report ("Rep't") at 2. He is certified in the comprehensive practice of industrial hygiene by the American Board of Industrial Hygiene and in the practice of safety by the Board of Certified Safety Professionals. *Id.* He has been employed as Lead Industrial Hygienist and Environmental Hygiene Program Manager for United States Citizenship and Immigration Services ("USCIS") in the United States Department of Homeland Security since 2015. *Id.* at 2. In that capacity, he is responsible for coordination and performance of industrial hygiene activities at all USCIS facilities across the United States. *Id.* He was employed as full-time faculty at the Drexel University School of Public Health from 2004 to 2014 and as Director of the Industrial Hygiene Consulting Service at the School from 2006 to 2014. *Id.*

In forming his opinion, Dr. Perez interviewed the plaintiff, reviewed his deposition transcript and reviewed U.P. air sampling data. Filing No. 60, Ex. 2, Dr. Perez Rep't at 1-2; *id.*, Appendix A, Sampling Data Summary Analysis; *id.*, Supplemental Rep't at 1. He reviewed various journal articles, books, standard textbooks, relevant peer-reviewed scientific literature, and OSHA, NIOSH, EPA, ATSDR, MSHA, National Cancer Institute (NCI), National Institute of Environmental Health Sciences (NIEHS), and International Agency for Research on Cancer (IARC) websites. *Id.*

The parties agree that Dr. Perez has never taken any measurements of diesel exhaust as part of his litigation consulting and has never observed machine operators

---

[1] Dr. Perez's opinions are limited to the plaintiff's alleged exposure to diesel exhaust.

3

performing the plaintiff's tasks in the field. Dr. Perez testified he knows that the plaintiff's work areas were one to two miles in length, and that proximity to a substance and ambient air conditions are factors relevant to determining exposure to the substance. Dr. Perez also knows that some of the plaintiff's work environments did not have significant, or even detectable, exposures to diesel exhaust. Dr. Perez does not know the exact type of diesel fuel used in the machines that the plaintiff operated, however, Dr. Perez reviewed the Materials Safety Data Sheets provided by the Railroad regarding the diesel fuel it had purchased. Filing No. 60, Exhibit 3, Deposition of Dr. Hernando Perez ("Dr. Perez Dep.") at 97.

Dr. Perez stated that working in an enclosed cab reduces a machine operator's potential exposure to diesel exhaust. Dr. Perez acknowledges that the machines the plaintiff primarily operated—tampers, ballast regulators, speed swings, and locomotive cranes—had enclosed cabs. Dr. Perez knows that the plaintiff's fitted respirator adequately protected him from diesel exhaust when worn properly.

Herbicides are not mentioned in Dr. Perez's report. He testified that he had not seen any data that would allow him to opine that the plaintiff was exposed to any particular type of herbicide.

Based on his evaluation and his education and experience in the field, Dr. Perez states that U.P. failed to provide a reasonably safe place to work in failing to provide air monitoring or otherwise determine Cleaver's level of exposure to diesel exhaust; failing to provide Cleaver with appropriate training, respiratory personal protective equipment; or other personal protective equipment to prevent or lessen his exposures to diesel exhaust or creosote; failing to implement any administrative or engineering controls to

reduce or prevent diesel exhaust or creosote exposures to Mr. Cleaver; failing to provide adequate and appropriate warnings, training and information about the hazards of diesel exhaust or creosote to Mr. Cleaver and failing to comply with the OSHA General Duty Clause, OSHA Act Section 5(a)(1). Filing No. 60, Ex. 2, Dr. Perez Rep't at 20. Dr. Perez concluded that U.P.'s actions fell beneath a reasonable standard of care. *Id.*

Dr. Theron Blickenstaff was retained by the plaintiff to testify on the nature and extent of the plaintiff's injuries, and on general and specific causation. Filing No. 48-3, Ex. 3, Plaintiff's Rule 26 Expert Disclosures at 1. Dr. Blickenstaff has an M.D. from the University of Cincinnati and a Master of Public Health (Epidemiology) degree from the University of North Carolina. He is Board Certified in General Preventive Medicine and Occupational Medicine and is a Fellow of the American College of Occupational and Environmental Medicine. He has thirty-seven years of experience in occupational and environmental medicine and has consulted on many cases of cancers and other diseases possibly caused by occupational exposures or environmental conditions, including exposures to asbestos, particulates, solvents including benzene, coal tar pitch, and many other known or suspected chemical carcinogens. Filing No. 60, Ex. 4, Dr. Blickenstaff Rep't. at 1. He reviewed Cleaver's deposition, responses to requests for production and answers to interrogatories, the complaint, and Cleaver's medical records. *Id.* at 1. He also reviewed and relied on Dr. Perez's report and on IARC publications and monographs and other studies. *Id.* at 2. Dr. Blickenstaff testified that he performed an informal differential etiology, ruling out family history as a cause of Cleaver's mantle cell lymphoma. Filing No. 48-7, Ex. 7, Deposition of Dr. Theron Blickenstaff ("Dr. Blickenstaff Dep.") at 89, 96.

5

Dr. Blickenstaff testified that the differences between the patterns of the translocation of chromosomes in mantle cell lymphoma may differ from other subtypes of non-Hodgkin's lymphoma, but stated that it is appropriate to consider other types of non-Hodgkin's lymphoma in the context of Mr. Cleaver's case, considering there is a small body of research available on that specific subtype. *Id.* at 74-79. Dr. Blickenstaff testified he reviewed Dr. Perez's report and deferred to the industrial hygienist's assessment as to the amount of the plaintiff's exposure to diesel exhaust. *Id.* at 82-83. Regarding the plaintiff's claimed herbicide exposure, Dr. Blickenstaff assumed the plaintiff was exposed to Roundup (a trade name for glyphosate) based on general knowledge of the use of the substance. *Id.* at 84. He also testified that Cleaver reported that he had been told Roundup was applied. *Id.* at 9. Dr. Blickenstaff states that in his opinion, to a reasonable degree of medical certainty, "Mr. Cleaver's railroad work exposures to diesel fumes/exhaust, benzene and glyphosate were causally related to his mantle cell lymphoma." Filing No. 60, Ex. 4, Blickenstaff Rep't at 4.

In support of its motions in limine, the Railroad submits the declarations of its expert witnesses. Filing No. 48-9, Ex. 9, Declaration of Christopher M. Long, SC.D, DABT; Filing No. 48-11, Ex. 11, Declaration of Matthew Lunning, D.O. Those experts state the plaintiff's experts' methodology is scientifically unreliable and express opinions contrary to those of the plaintiff's experts. *See id.*

II. LAW

    A. Summary Judgment

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure

6

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042, (8th Cir. 2011) (en banc) (quoting Celotex, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting Celotex, 477 U.S. at 324).

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. Kenney v. Swift Transp., Inc., 347 F.3d 1041, 1044 (8th Cir. 2003). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." Id.

B.  Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires that: "(1) the evidence must be based on scientific, technical or other specialized knowledge that is useful to the finder of fact in deciding the ultimate issue of fact; (2) the witness must have sufficient expertise to assist the trier of fact; and (3) the evidence must be reliable or trustworthy." Kudabeck v. Kroger Co., 338 F.3d 856, 859 (8th Cir. 2003). When faced with a proffer of expert testimony, trial judges are charged with the "gatekeeping" responsibility of ensuring that all expert evidence admitted is both relevant

7

and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert*, 509 U.S. at 589. The proponent of expert testimony bears the burden of providing admissibility by a preponderance of the evidence. *Lauzon v. Senco Prods.*, 270 F.3d 681, 686 (8th Cir. 2001).

Testimony is relevant if it is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact. *Kudabeck*, 338 F.3d at 860. To satisfy the reliability requirement, the party offering the expert testimony must show by a preponderance of the evidence "that the methodology underlying [the expert's] conclusions is scientifically valid." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (citations omitted). There is no single requirement for admissibility as long as the proffer indicates that the expert's testimony and evidence is reliable and relevant. *Klingenberg v. Vulcan Ladder USA, LLC*, 936 F.3d 824, 829 (8th Cir. 2018).

"When the *application* of a scientific methodology is challenged as unreliable under *Daubert* and the methodology itself is sufficiently reliable, outright exclusion of the evidence is warranted only if the methodology 'was so altered by a deficient application as to skew the methodology itself.'" *United States v. Gipson*, 383 F.3d 689, 697 (8th Cir. 2004) (emphasis in original) (quoting *United States v. Martinez*, 3 F.3d 1191, 1198 (8th Cir. 1993)). Generally, deficiencies in application go to the weight of the evidence, not its admissibility. *See id.* "'As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.'" *Bonner v. ISP Techs.*,

8

*Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (quoting *Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 976 (8th Cir. 1995)).

"[C]ases are legion" in the Eighth Circuit that "call for the liberal admission of expert testimony." *Johnson v. Mead Johnson & Co.*, LLC, 754 F.3d 557, 562 (8th Cir. 2014). "As long as the expert's scientific testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross–examination, rather than excluded by the court at the outset." *Id.* (quoting *Daubert*, 509 U.S. at 590). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

District courts are "not to weigh or assess the correctness of competing expert opinions." *Id.* The jury, not the trial court, should be the one to 'decide among the conflicting views of different experts.'" *Kumho Tire,* 526 U.S. at 153. Medical experts often disagree on diagnosis and causation and questions of conflicting evidence must be left for the jury's determination. *Hose,* 70 F.3d at 976.

C. The FELA

Railroads are liable in damages for an employee's "injury or death resulting in whole or in part from the Railroad's negligence." 45 U.S.C. § 51. Appraising negligence under FELA "turns on principles of common law . . . , subject to such qualifications [that] Congress" introduces. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543-44 (1994) (noting the qualifications are the modification or abrogation of several common-law defenses to liability, including contributory negligence and assumption of risk). The FELA

9

is to be liberally construed, but it is not a workers' compensation statute, and the basis of liability is "negligence, not the fact that injuries occur." *Id.* at 543.

The FELA imposes upon employers a continuous duty to provide a reasonably safe place to work. *Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 889 (8th Cir. 2012). The railroad's duty to provide a safe workplace is a duty of reasonable care. *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703 (2011). However, "a relaxed standard of causation applies under FELA." *Gottshall*, 512 U.S. at 543; *see Holloway v. Union Pac. R.R. Co.*, 762 F. App'x 350, 352 (8th Cir. 2019). The test is simply whether the railroad's negligence played a part—no matter how small—in bringing about the injury. *McBride*, 564 U.S. at 705; *see also Paul v. Mo. Pac. R.R. Co.*, 963 F.2d 1058, 1061 (8th Cir. 1992)(stating that "[u]nder FELA, the plaintiff carries only a slight burden on causation."). In FELA cases, the negligence of the defendant need not be the sole cause or whole cause of the plaintiff's injuries.[2] *Claar v. Burlington N.R.R. Co.*, 29 F.3d 499, 503 (9th Cir. 1994).

Despite the lower causation standard under FELA, a plaintiff must still demonstrate some causal connection between a defendant's negligence and his or her injuries. *Brooks v. Union Pac. R.R. Co.*, 620 F.3d 896, 899 (8th Cir. 2010). In order to avoid summary judgment, a FELA plaintiff is required to produce admissible evidence that the railroad's negligence played a part in causing his alleged injury. *Id.* If an injury has "no obvious origin, 'expert testimony is necessary to establish even that small quantum of

---

[2] In contrast, "[t]o establish causation in a common law negligence action, a plaintiff generally must show that the defendant's conduct was a 'substantial factor in bringing about the harm.'" *Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 87 (2d Cir. 2006) (quoting Restatement 2d of Torts § 431(a)). In a toxic tort case under general negligence principles, a plaintiff must show proximate cause, presenting evidence from which a reasonable person could conclude that a defendant's toxic emission had probably caused harm in order to recover). *Wright v. Willamette Indus.*, 91 F.3d 1105, 1106 (8th Cir. 1996) (applying Arkansas law). applying a

10

causation required by FELA.'" *Brooks*, 620 F.3d at 899 (quoting *Claar*, 29 F.3d at 504); see also *Mayhew v. Bell S.S. Co.*, 917 F.2d 961, 963 (6th Cir. 1990) ("[A]lthough a [FELA] plaintiff need not make a showing that the employer's negligence was the sole cause, there must be a sufficient showing (i.e. more than a possibility) that a causal relation existed."). "The standard of causation under FELA and the standards for admission of expert testimony under the Federal Rules of Evidence are distinct issues and do not affect one another." *Claar*, 29 F.3d at 503.

A differential diagnosis or etiology is "an alternative method of establishing causation," one which may be utilized where the particular facts of the case do not lend themselves to quantitative analysis.³ *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 261 (6th Cir. 2001) (rejecting defendant railroad's argument that the only way the plaintiff could establish causation would be with the proffer of a known "dose/response relationship" or "threshold phenomenon[,]"). "In performing a differential diagnosis, a physician begins by 'ruling in' all scientifically plausible causes of the plaintiff's injury. The physician then 'rules out' the least plausible causes of injury until the most likely cause remains." *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001). In the Eighth Circuit, differential diagnoses in general pass muster under *Daubert*. *Johnson*, 754 F.3d at 564 (finding an opinion based on a differential diagnosis "presumptively admissible," and stating that a district court may not exclude such expert testimony unless the diagnoses are "scientifically invalid"). Also, the Eighth Circuit has "consistently ruled

---

³ Differential diagnosis refers to a physician's "determination of which one of two or more diseases or conditions a patient is suffering from, by systematically comparing and contrasting their clinical findings." *King v. Burlington N. Santa Fe Ry. Co.*, 762 N.W.2d 24, 49 (Neb. 2009). "In contrast, etiology refers to determining the causes of a disease or disorder." *Id.* at 49-50.

11

that experts are not required to rule out all possible causes when performing the differential etiology analysis." *Id.* at 563.

To prove exposure levels, a plaintiff need only make a threshold showing that he or she was exposed to toxic levels known to cause the type of injury suffered. *Mattis v. Carlon Elec. Prods.*, 295 F.3d 856, 860-61 (8th Cir. 2002). In the context of the FELA, a plaintiff need not necessarily prove the levels of a toxin to which he or she was exposed.[4] *See Hardyman,* 243 F.3d at 262-66 (reversing trial court's ruling that plaintiff could establish causation only by showing a "dose/response relationship" between exposure levels and risk of disease and finding that an expert need not possess specific dosage information in order to testify about causation in an FELA case)*; Harbin v. Burlington N.R.R. Co.*, 921 F.2d 129, 132 (7th Cir. 1990) (finding a plaintiff need not identify the specific composition and density of soot present in his work environment to survive a summary judgment—although "expert testimony documenting the hazards posed by the presence of so many parts per million of soot in the air would certainly enhance [the plaintiff's] case, it is not essential under the regime of the [FELA]."); *Higgins v. Consol. Rail Corp.*, No. 1:06-CV-689 GLS/DRH, 2008 WL 5054224, at *4 (N.D.N.Y. Nov. 21, 2008) (finding an issue of fact as to causation even if expert testimony had been excluded because due to the slight burden of proof in FELA actions, and stating that a jury may

---

[4] Even under common-law negligence standards, a plaintiff does not need to produce a "mathematically precise table equating levels of exposure with levels of harm" to show that he was exposed to a toxic level of a chemical, but must only present "evidence from which a reasonable person could conclude that his exposure *probably caused* his injuries." *Bonner*, 259 F.3d at 928 (emphasis added). "[W]hile precise information concerning the exposure necessary to cause specific harm to humans and exact details pertaining to the plaintiff's exposure are beneficial, [it must be recognized that] such evidence is not always available, or necessary, . . . and need not invariably provide the basis for an expert's opinion on causation." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 264 (4th Cir. 1999) (involving a strict liability, breach of warranty, and negligence action).

make inferences in an FELA case that it otherwise could not); *Sunnycalb v. CSX Transp., Inc.*, 926 F. Supp. 2d 988, 995-96 (S.D. Ohio 2013) (finding that the plaintiff's inability to establish a precise level of chemical exposure did not bar recovery under FELA—the evidence was sufficient for the jury to draw the reasonable inference that CSX's negligence played a part in plaintiff's injuries); *Payne v. CSX Transp., Inc.*, 467 S.W.3d 413, 457 (Tenn. 2015) ("[S]tated simply, the plaintiff's experts were not required to establish 'a dose exposure above a certain amount' before they could testify about causation."); and *Russell v. Ill. Cent. R.R.*, No. W2013-02453-COA-R3-CV, 2015 WL 4039982 (rejecting defendant railroad's contention that an expert's opinions were not reliable because the differential diagnoses on which they were based "did not consider the dose, frequency or duration" of the plaintiff's exposure to carcinogens at work).

III. DISCUSSION

The Court first finds the Railroad's motion to exclude the testimony of Drs. Blickenstaff and Perez should be denied. Both experts are clearly qualified to render their opinions and their opinions are relevant and reliable enough to pass muster under Rule 702 and *Daubert*.

Dr. Perez's methodology was reasonable in light of his expertise in the fields of industrial and environmental hygiene. Dr. Perez has the qualifications and expertise to express opinions regarding foreseeability and notice with respect to Cleaver's injury and the defendant's negligence. The defendant has not pointed to any deficiencies in Dr. Perez's methodology or the principles he relied on in formulating his opinions. Dr. Perez's report was supported with clear reference to the data and peer-reviewed literature. Dr. Perez interviewed and read the deposition testimony of the plaintiff, who had first-hand

knowledge of his workplace and exposure to diesel exhaust. Dr. Perez relied on peer-reviewed studies and literature, as well as authoritative government publications, in forming his opinions and conclusions. Based on that data, Dr. Perez was able to estimate, to a reasonable degree of certainty, Cleaver's lifetime exposure to diesel exhaust, and to correlate his exposure to an increased risk of developing mantle cell lymphoma. Without crediting the opinion of the defendant's expert on the subject, the Court has no basis to find that the methodology underlying Dr. Perez's conclusions and opinions is not scientifically valid, or that he failed to properly apply his described methodology.

The Court also rejects the defendant's contentions that Dr. Blickenstaff's causation opinions are devoid of factual support and he did not employ a reliable underlying scientific methodology to reach his conclusions. The Railroad asserts that Dr. Blickenstaff has no knowledge of the amount or dose of exposure to diesel exhaust or glyphosate that is likely to cause mantle cell lymphoma nor can he identify how much diesel exhaust or glyphosate the plaintiff was exposed to while working at U.P. The Railroad also argues that Dr. Blickenstaff did not properly perform a differential diagnosis. Those arguments are not supported by the record.

Though Dr. Blickenstaff's report lacks detail, he sufficiently discloses and supports his opinion that Cleaver's moderate or high-level exposures to benzene in diesel exhaust in the course of his lengthy employment contributed to the development of mantle cell carcinoma. The moderate to high exposure determination was based on Dr. Perez's report, which was, in turn, based on Cleaver's first-hand knowledge and on U.P. air quality studies. Dr. Blickenstaff properly extrapolated his opinion from the facts and literature. The record shows he performed a differential diagnosis, though informally, which is a

14

tested methodology that has been subjected to peer review/publication and is accepted in the medical community.

Both experts' testimony will assist the trier of fact in determining the requisite causal connection between the toxins at issue and the injury—that U.P.'s allegedly negligent conduct in exposing Cleaver to diesel exhaust and herbicides over almost forty years of employment—played a part in Cleaver's cancer. The lack of quantitative data is not fatal to the admissibility of the experts' opinions since the lack of such data is typical in epidemiological cases. The alleged shortcomings in the experts' evaluations are properly the subject of cross-examination and do not call for exclusion of the testimony. The defendant's criticisms go to the weight, rather than the admissibility, of the testimony.

Under the FELA, the plaintiff need not demonstrate the railroad's conduct was the proximate cause of the injury, but only that it played a part—no matter how small—in the injury. The Court finds the experts' opinions have a factual basis and are supported by accepted scientific theories. The record shows the experts based their opinions on medical records, peer-reviewed studies, evidence of exposures over a long period of time, and on their education and experience in the fields of industrial hygiene, statistics, toxicology, epidemiology, and public and occupational health.

The defendant relies in part on the declarations of its experts to discredit Drs. Blickenstaff and Perez. That showing presents a classic battle of the experts. The jury should decide among the conflicting views of different experts. The Court would invade the province of the jury if it were to credit the testimony of the Railroad's experts over the plaintiff's experts.

The Court's review of the record shows that the scientific testimony at issue rests on "appropriate validation—i.e., 'good grounds', based on what is known," Daubert, 509 U.S. 590, and "should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." Johnson, 754 F.3d at 562. The experts' opinion are not so "fundamentally unsupported that [the testimony] can offer no assistance to the jury." Bonner, 259 F.3d at 929–30.

The Court finds the methodology employed by the plaintiff's experts is scientifically valid, can properly be applied to the facts of this case, and is reliable enough to assist the trier of fact. This is not the sort of junk science that Daubert addresses. Even if there are grounds for some alternative conclusion or flaws in the experts' methods, the expert testimony at issue is within "the range where experts might reasonably differ," and the jury, not the trial court, should be the one to "decide among the conflicting views of different experts." Kumho Tire, 526 U.S. at 153.

With the admission of the expert testimony, there are issues of fact for the jury on exposures and causation. U.P. has not shown as a matter of law that the plaintiff cannot prevail in establishing that U.P.'s negligence "played a part" in Cleaver's mantle cell lymphoma. The Court finds the defendant's motion for summary judgment should also be denied. Accordingly,

**IT IS ORDERED THAT:**

1. The defendant's motion in limine to exclude Dr. Hernando Perez's testimony (Filing No. 46) is denied.

2. The defendant's motion in limine to exclude Dr. Theron Blickenstaff's testimony (Filing No. 44) is denied.

16

3. The defendant's motion for summary judgment (Filing No. 42) is denied.

Dated this 7th day of January 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge